IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KENNETH SCOTT RAULERSON,

      Plaintiff,

v.                                      CASE NO. 1:08-cv-00222-MP-GRJ

DAVID ALRED, ALEX P BAILY, JOHN BLOUNT, ANGELA DOE, JOHN DOE, JOHN
DOE, JOHN DOE, DUANE DYKSTRA, GARY GETCHELL, DEAN KELLY, JOHN
MERCHANT, JOHNNY SMITH,

      Defendants.

_____/

# O R D E R

This matter is before the Court on Doc. 106, Report and Recommendation of the

Magistrate Judge, which recommends that the motion for summary judgment filed by defendants

Blount and Alred, Doc. 65, be granted in part and denied in part, and that the motion for

summary judgment filed by defendant Dykstra, Doc. 74, be granted.  Blount and Alred timely

filed an objection to the Report and Recommendation, Doc. 107, to which plaintiff Raulerson

replied, Doc. 108. The Court has made a de novo determination of those portions of the Report

and Recommendation to which objection was made. 28 U.S.C. § 636(b)(1)(C).

Raulerson seeks compensatory damages for injuries both he and his son received during

Raulerson's arrest on June 1, 2006, in which an attack dog with the K-9 unit bit both Raulerson

and his son.  Doc. 14.  Plaintiff claims that the defendants violated his Fourth Amendment rights

by (1) using excessive force in the course of an arrest, and (2) by failing to intervene in the use of excessive force in the course of an arrest. Doc. 14. The defendants have moved for summary judgment, asserting qualified immunity and other arguments.

The parties hotly dispute what happened during the arrest, and below the Court sets out the incident as alleged by each side. First, according to Raulerson, upon witnessing the police enter the room in which he, his son, and his son's mother were situated, he immediately threw his "hands up and sat down." Doc. 66, Ex. A-2, at 64-65. An officer Raulerson cannot identify then approached Raulerson and placed handcuffs on him. *Id.* at 68. That same officer also placed Raulerson in a choke hold while defendant Blount held Raulerson at gunpoint. *Id.* at 64-65, 74-75.

Moments later, according to Raulerson, the attack dog entered the room and began biting Raulerson's son. *Id.* Raulerson then shouted that he was the one they wanted, not his son. Officer Bailey, the K-9 officer in charge of the attack dog, then pulled the dog off of Raulerson's son and led the dog toward Raulerson. Before latching onto Raulerson, the dog bit the officer who held Raulerson in a choke hold. *Id.* at 65-66. Officer Bailey pulled the dog off of that officer, and, with a German command, instructed the dog to attack Raulerson. *Id.* at 66. The dog did not immediately respond. Bailey then slapped Raulerson on the stomach and again gave a German command to attack. *Id.*

The dog allegedly bit Raulerson on the stomach and continued to bite until Bailey pulled the dog off of Raulerson. This subsequently caused a tear across Raulerson's stomach. *Id.* at 67. The dog had its teeth in Raulerson for thirty to forty-five seconds, Raulerson averred. *Id.* Raulerson alleged that during this scene, defendant Alred was also present in the room; however, when questioned, Raulerson could not identify with any confidence what Alred was doing or

what he looked like.  *Id.* at 75-76.  Raulerson also does not remember whether Dykstra was in the room.  *Id.* at 71.

The defendants' version of the arrest was much different.  According to the defendants, Raulerson resisted during the arrest.  Officer Bailey reported that, rather than immediately sitting down with his hands up, Raulerson actually moved towards Bailey and the attack dog while the dog was biting Rauelrson's son.  *See* Bailey's Report.  Likewise, Officer Blount indicated that when he entered the room, the attack dog was already engaged with Raulerson, who was resisting.  *See* Declaration of John Blount, Doc. 107-1.  At this point, no officer had placed Raulerson in handcuffs.  *Id.*  Blount proceeded to do so while instructing Raulerson to stop resisting.  *Id.*  After Raulerson was cuffed, Blount indicated this to Bailey, who instructed the dog to release.  *Id.*  The entire incident lasted no more than ten seconds.  *Id.*  Similarly, officer Alred averred that the K-9 unit was the first on the scene.  *See* Declaration of David Alred, Doc. 107-2.  He stated that a fight ensued between Bailey and Raulerson, at which point the dog attacked Raulerson.  *Id.*  However, after five or ten seconds, Raulerson was cuffed and the incident was over.  *Id.*

As an initial matter, the Court agrees with the Magistrate Judge that even if the facts above are viewed in the light most favorable to Raulerson, he simply has not offered evidence that either Blount, Alred or Dykstra ever had any contact with him or used any force - excessive or otherwise - against him.  That is, Raulerson alleges that it was unknown officer who placed handcuffs on him.  Doc. 66, Ex. A-2, at 68.  Officer Bailey, who was in charge of the attack dog, led the dog toward Raulerson.  *Id.* at 65.  At the same time, the same John Doe held Raulerson in a choke hold.  *Id.* at 67-68.  When the dog attacked, officer Blount was merely in the room, aiming an assault rifle with laser light at Raulerson.  *Id.* at 74-75.  While Raulerson also alleged

that officer Alred was in the room, when questioned Raulerson could neither describe Alred or state with any confidence what Alred was doing during the incident. *Id.* at 75-76. Raulerson also could not "say whether Dykstra was in the room and saw [the incident] or whether he was outside." *Id.* at 71. In short, Raulerson does not allege that any force was used by officers Blount, Alred, or Dykstra. Thus, as to the direct use-of-excessive-force claim against Blount, Alred, and Dykstra, summary judgment is appropriate. Moreover, plaintiff does not offer any evidence to support that Dykstra was in any position to protect plaintiff from any excessive force applied by the officers. Thus, plaintiff's failure to protect claim against Dykstra fails, and summary judgment on all claims is appropriate with regard to Dykstra.

With regard to the failure to protect claim against Blount and Alred, these defendants assert that their conduct is protected by qualified immunity. Specifically, in their Objections to the Report and Recommendation, Doc. 107, defendants Blount and Alred argue that Raulerson's account of the incident is too "remarkable and inconsistent . . . to overcome Defendants' qualified immunity." Doc. 107. In other words, the defendants are suggesting that in qualified immunity cases the Court should ignore the traditional standards of review in summary judgment cases – that the trial court must "consider all the evidence in the light most favorable to the non-moving party." *Rollins v. TechSouth, Inc.* 833 F.2d 1525, 1528 (11th Cir. 1987); must "resolve all reasonable doubts in favor of the non-moving party." *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) and must also recognize that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge..." *Anderson*, 477 U.S. at 255. Instead, defendants in essence urge the Court to weigh plaintiff's testimony, find it not credible, and then to credit the sworn declarations of Blount and Alred attached to their Objections. *See* Doc. 107-1 & 107-2.

In support of the argument that the Court is allowed to do this in the context of qualified immunity, the defendants point to *Pratt v. Snohomish Cnty.*, No. 93-35658, 1993 WL 557205, at *2 n.2 (9th Cir. Jan. 14, 1993).  In *Pratt*, the Ninth Circuit cited the Seventh Circuit for the proposition that "[w]hen reasonable minds could differ, in the typical summary judgment decision the balance tips in favor of the nonmovant while in the qualified immunity context the balance favors the movant."  *Id.* (citing *Ellis v. Wynalda*, 999 F.2d 243, 246 n.2 (7th Cir. 1993)). Defendants interpret these statements by the *Pratt* & *Ellis* courts to mean that, in the context of evaluating a qualified immunity claim, a district court is permitted to make factual determinations such as credibility of witness testimony.  However, as defendants even acknowledge, courts have questioned this interpretation.  For example, in *Estate of Keys v. City of Harvey*, No. 92-C-2177, 1995 WL 247989, *12 (N.D. Ill. April 26, 1995) the Court suggested that, in *Ellis*, "[t]he Seventh Circuit [was] referring to whether reasonable minds could differ regarding the determination of the lawfulness of an [officer's] actions given a certain set of facts, not whether reasonable minds could differ regarding what the facts are."

In any event, the Court in the instant case does not need to guess the intent of the Ninth and Seventh Circuits because the Eleventh Circuit in 2010 clearly set out the standards of review in summary judgment cases involving qualified immunity.  The Eleventh Circuit instructed as follows:

> Courts utilize a two-part framework to evaluate qualified immunity defenses. One inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). If the facts, **construed in the light most favorable to the plaintiff**, show that a constitutional right has been violated, another inquiry is whether the right violated was "clearly established." *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156. Both elements of this test must be satisfied for an official to lose qualified immunity, and this

two-pronged analysis may be done in whatever order is deemed most appropriate for the case. *Pearson v. Callahan*, 555 U.S. ----, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009); *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010)(emphasis added). Therefore, the Court agrees with the Magistrate Judge that the record in the case must be considered in the light most favorable to the plaintiff.

In this light, the Court holds that plaintiff has raised a genuine issue of material fact as to whether the officers at the scene used excessive force such that Blount and Alred should have protected plaintiff.  For force to be deemed excessive, a court must look to the totality of the circumstances, including "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Raulerson has produced evidence, including his testimony and the testimony of his family members which, if believed, shows that he was fully compliant with the demands of the police and that the dog attack occurred after police placed him in handcuffs, in a choke-hold, and at gunpoint.  Doc. 66, Ex. A-2, at 64-66, 74-76.  It is true that Defendants presented testimony in which the dog attack occurred in response to Raulerson's resistance and threatening behavior, and that Mr. Raulerson's account is not always logically consistent.  *See* Docs. 107-1, 107-2.  However, determining whether the officers' version or plaintiff's version is more likely true requires an evaluation of credibility, which is a function for the jury, not the judge.  *Anderson*, 477 U.S. at 255.  Thus, a genuine issue of material fact exists and summary judgment is inappropriate on the question of whether the other officers used excessive force and Blount and Alred failed to protect plaintiff from it.

Moreover, such conduct, if proven, would also satisfy the second prong of the qualified

immunity test: whether the law violated was "clearly established." *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  The Eleventh Circuit has stated that whether the law is "clearly established" depends on whether the officers had "fair warning" that their conduct was unlawful.  *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (citing *Hope*, 536 U.S. 730).  In this regard, qualified immunity cannot be invoked simply because no previous case had precisely the same factual pattern.  *Hope*, 536 U.S. at 739.  As the *Hope* Court instructed:

> Although earlier cases involving "fundamentally similar" facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding. The same is true of cases with "materially similar" facts. Accordingly...,the salient question that the Court of Appeals ought to have asked is whether the state of the law in 1995 gave respondents fair warning that their alleged treatment of Hope was unconstitutional.

*Id.* at 741.  Thus, as the *Hope* Court held, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  *Id.*  Here, even if the precise factual pattern has not appeared in prior cases, defendants had fair warning that allowing a compliant, handcuffed suspect, held at gunpoint, and in a headlock, to be bitten by a dog during an arrest would be unlawful.  If plaintiff were able to prove this actually occurred, this would be conduct that "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct [is] readily apparent."  *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)).  Thus, Blount and Alred are not entitled to summary judgment based on qualified immunity.

Blount and Alred also argue that summary judgment is appropriate as Raulerson's injuries were de minimis.  The Eleventh Circuit has held that the "application of de minimis force, without more, will not support a claim for excessive force."  *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).  Courts may look to the nature of the injury in determining whether

de minimis force was used.  *Id.* at 1256 (citing *Gold v. City of Miami*, 121 F.3d 1442, 1446-47

(11th Cir. 1997)).  This includes evidence of "visible injury at the time of the incident" and

"medical evidence of serious lasting injuries caused by an alleged use of force."  *Lassiter v.*

*Reece*, No. 3:07-885-HFF-JRM, 2008 WL 2852164, at *5 (D.S.C. July 22, 2008).  In the instant

case, Raulerson produced evidence showing bite marks from the dog attack and emergency room

treatment for those wounds.  Moreover, he complains that he continues to experience pain when

exercising.  In short, although Raulerson may not have suffered severe injuries, he has produced

evidence sufficient to create a genuine issue of material fact as to whether his injuries rise above

the de minimis level.

For the reasons given above,

**ORDERED AND ADJUDGED:**

1.	The Report and Recommendation of the Magistrate Judge, Doc. 106, is ACCEPTED and incorporated herein.

2.	The Motion for Summary Judgment filed by defendants Blount and Alred, Doc. 65, is GRANTED in part and DENIED in part, as described above.

3.	Motion for Summary Judgment filed by defendant Dykstra (Doc. 74)  is GRANTED, and all claims against him are dismissed.

4.	This matter is recommitted to the Magistrate Judge for further proceedings.

**DONE AND ORDERED** this _7th_  day of July, 2011

_____*s/Maurice M. Paul*_____

Maurice M. Paul, Senior District Judge